UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YVONNE WHITFIELD, and
ESTATE OF JAMES WHITFIELD,

        Plaintiffs,

vs.

BANK OF AMERICA, and
FANNIE MAE,

        Defendants.
_____/

Civil Action No.
12-cv-14585

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER
(1) DENYING PLAINTIFFS' VERIFIED MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT(S) (Dkt. No. 5), and
(2) GRANTING DEFENDANTS' MOTION TO DISMISS
<u>AMENDED COMPLAINT (Dkt. No. 3)</u>**

Plaintiffs Yvonne Whitfield and the Estate of James Whitfield filed the Amended Complaint in this matter on September 19, 2012, in Wayne County Circuit Court. The Amended Complaint alleged the following five claims:

    I. Violation of Elliott-Larsen Civil Rights Act
    II. Negligence
    III. Injunctive Relief
    IV. Fraud/Misrepresentation
    V. Good Faith and Fair Dealing

On October 16, 2012, Defendants Bank of America, N.A. ("BANA") and Fannie Mae filed a Notice of Removal in this Court, alleging that they first received notice of the state-court action on September 26, 2012, when Fannie Mae was served with the Summons and Amended Complaint. (Dkt. No. 1.) Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

1

On October 23, 2012, Defendants filed a Motion to Dismiss the Amended Complaint. (Dkt. No. 3.) On November 26, 2012, Plaintiffs filed a Verified Motion for Default Judgment Against Defendants. (Dkt. No. 5.) Plaintiffs filed a Response to Defendants' motion on November 30, 2012. (Dkt. No. 8.) On December 21, 2012, Defendants filed a Response to Plaintiffs' motion and a Reply to their Motion to Dismiss. (Dkt. Nos. 11, 12.) On January 16, 2013, Plaintiffs filed a Reply. (Dkt. No. 16.) The Court held a hearing on both motions on March 28, 2013.

For the reasons stated below, the Court will:

(1) DENY Plaintiffs' Verified Motion for Default Judgment Against Defendant(s), and

(2) GRANT Defendants' Motion to Dismiss.

## I. BACKGROUND[1]

On March 9, 2006, Plaintiff Yvonne Whitfield and her husband, James Whitfield, obtained a $233,100 mortgage loan for property located at 30667 Nelson Circle in Westland, Michigan. Defendant BANA was the servicer of Plaintiffs' mortgage.

In 2009, Plaintiffs began to experience a financial hardship due to a serious illness suffered by James Whitfield. On April 21, 2009, Plaintiff Yvonne Whitfield spoke with an agent of Defendant BANA and requested a mortgage loan modification. (Am. Compl. ¶ 7.) Defendant BANA's agent explained the required paperwork to Plaintiffs, and Plaintiffs faxed the paperwork to Defendant BANA on April 30, 2009. (Am. Compl. ¶ 8.) Plaintiffs did not receive a response from Defendant BANA, and called to check on their mortgage loan modification application on July 9, 2009. (Am. Compl. ¶ 9.) Plaintiffs were instructed that the modification was declined on April

---

[1] In ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true the facts alleged in the Amended Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

21, 2009. (*Id*.) Plaintiffs allege that "[t]he Defendant's agent Torry further advised Plaintiffs to wait a while and call Making Home Affordable for refinancing." (*Id*.)

Plaintiffs next allege that, on June 26, 2010, they received a letter from Defendant BANA with instructions on applying for the Home Affordable Modification Program. Plaintiffs sent all of the required documents to Defendant. (Am. Compl. ¶ 10.) Plaintiffs were advised on September 15, 2010, to call Defendant BANA every other week to check on the status of their application. (Am. Compl. ¶ 11.)

On November 8, 2010, Plaintiff Yvonne Whitfield called Defendant BANA and spoke with Anthony Villarosa, who told Plaintiff to call back the next day because "the system is updating all modification request [sic] and it will continue to be updating for the next hour[.]" (Am. Compl. ¶ 12.)

Plaintiffs called Defendant BANA again on November 22, 2010, and were told that their paperwork was waiting to be assigned to an underwriter. (Am. Compl. ¶ 13.)

On December 8, 2010, Plaintiffs received a letter requesting two pay stubs not more than 90 days old, and their two most recent bank statements for two consecutive months. (Am. Compl. ¶ 14.) Although the information had previously been provided, Plaintiffs were advised that the previous documents were now outdated, and updated financial documents were required. (*Id*.) Plaintiffs submitted the information and received a confirmation that it had been received on January 12, 2011. (Am. Compl. ¶ 14.)[2]

On February 8, 2011, Lillian Reyes of Defendant BANA contacted Plaintiffs requesting new

---

[2]The Amended Complaint has two paragraphs numbered as "14." This allegation appears in the second paragraph number as 14.

paperwork, because the paperwork Plaintiffs submitted in December 2010 had some account information blacked out. (Am. Compl. ¶ 15.) Plaintiffs faxed the requested information and further stated that they were dissatisfied with the modification process, noting that the median price range for homes in their neighborhood was $116,000. (Am. Compl. ¶ 16.)

Ms. Reyes again contacted Plaintiffs on March 17, 2011, requesting new pay stubs, explaining that the previously submitted pay stubs were blurry. (Am. Compl. ¶ 17.) Plaintiffs submitted the requested information. (*Id*.)

After Plaintiff's husband, James Whitfield, died, Plaintiff Yvonne Whitfield was sent another mortgage loan modification application to complete as an individual. (Am. Compl. ¶ 18.) Plaintiff forwarded this application to Defendant BANA on April 22, 2011. (*Id*.) Defendant BANA confirmed receipt of the application on April 26, 2011. (Am. Compl. ¶ 19.)

Plaintiffs allege that "on April 29, 2011, Defendant sent Plaintiff a response to her request regarding the status of her loan modification for her account and was advised the request had been forwarded to the appropriate department for further research." (Am. Compl. ¶ 21.) Plaintiffs do not allege when or how Plaintiff Yvonne Whitfield submitted the request referred to in this allegation.

Plaintiffs were contacted on July 27, 2011, by Radian Guaranty, Inc. ("Radian"), a private mortgage insurer, which is not a party in this case. (Am. Compl. ¶ 22.) Radian sought to assist Plaintiffs with a possible modification of their mortgage, and requested the same documentation that was previously requested by Defendant BANA. (*Id*.)

Plaintiffs allege that they received a letter dated November 29, 2011, which stated "that Defendant where [sic] now considering Plaintiff [sic] request . . . ." (Am. Compl. ¶ 23.) The word "now" in this allegation appears to be a typo. Plaintiffs attached the November 29, 2011 letter to

4

their Response to Defendants' Motion to Dismiss.[3] (Pls.' Exhibit Index, Ex. 16, Nov. 29, 2011 Letter, Dkt. No. 9.) The November 29, 2011 letter states:

> Thank you for contacting us regarding the federal government's Home Affordable Modification Program. We are not considering your request for a modification because after being offered a Trial Period Plan or Home Affordable Modification, you did not make the required Trial Period Plan payment by the end of the first month of the trial period.

(Nov. 29, 2011 Letter 1.)

The November 29, 2011 letter further requested that Plaintiffs contact Defendant BANA before December 29, 2011. (Am. Compl. ¶ 23.) Defendant Yvonne Whitfield contacted Defendant BANA and spoke with an employee named Carmen Andrews on December 12, 2011. (Am. Compl. ¶ 24.)

On December 21, 2011, Plaintiff Yvonne Whitfield received another letter from Defendant BANA requesting that she submit certain required documents by January 20, 2012, to be considered for a mortgage loan modification. (Am. Compl. ¶ 25.) Plaintiffs do not allege that they submitted the requested documentation, but it appears that Plaintiff Yvonne Whitfield did fax the documents to Defendant BANA on January 19, 2012. (Pls.' Exhibit Index, Ex. 18, Jan. 19, 2012 Documents.)

On January 13, 2012, Plaintiff Yvonne Whitfield received two letters notifying her that her property was in foreclosure. (Am. Compl. ¶ 26.)

---

[3] Although the November 29, 2011 letter was not attached as an exhibit to the Amended Complaint, the Court will consider it on Defendants' Motion to Dismiss because it is an "item[] appearing in the record of the case, . . . [and is] referred to in the Complaint and [is] central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Plaintiffs claim that Defendant BANA misrepresented facts regarding whether Plaintiffs' mortgage loan could be modified. (Am. Compl. ¶¶ 40-43.) Defendant BANA's correspondence with Plaintiffs regarding the modification of their home mortgage loan is thus "central to the claims contained [in the Amended Complaint]." *Bassett*, 528 F.3d at 430.

Plaintiff Yvonne Whitfield received another letter requesting documents for her modification request on January 24, 2012.  (Am. Compl. ¶ 27.)

On February 8, 2012, a notice was posted on Plaintiffs' property stating that a sheriff's sale would take place on March 8, 2012.  (Am. Compl. ¶ 28.)

Plaintiff Yvonne Whitfield called Defendant BANA's employee, Carmen Andrews, on March 8, 2012, and asked her about the sheriff's sale.  (Am. Compl. ¶ 29.)  Plaintiffs allege that "Ms. Andrews stated that there was no information listed for a sheriff sale and that she would investigate and try to stop the sale."  (*Id.*)

On March 9, 2012, Plaintiff Yvonne Whitfield again called Defendant BANA and spoke with Ms. Andrews.  (Am. Compl. ¶ 30.)  Ms. Andrews explained that she could not stop the sheriff sale.  (*Id.*)

Plaintiffs then filed the original Complaint in this action on August 28, 2012, and subsequently filed the Amended Complaint that is the subject of the instant motion to dismiss on September 19, 2012.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted).

## III.  ANALYSIS

### A.  Plaintiffs' Verified Motion for Default Judgment Against Defendant(s)

Plaintiffs filed a motion for default judgment on November 26, 2012 – over a month after

Defendants filed their motion to dismiss. The basis for Plaintiffs' requested default judgment is unclear based on Plaintiffs' motion and brief.[4] However, Plaintiffs counsel stated at oral argument that the motion is based on Defendants' failure to respond to Plaintiffs first set of interrogatories.

Plaintiffs' motion is procedurally improper. Federal Rule of Civil Procedure 37(b)(2)(A)(vi) allows the Court to enter a default judgment against a party who does not cooperate in discovery, but only after the party seeking the discovery has sought an order compelling discovery pursuant to Rule 37(a). The basis for sanctions under Rule 37(b) is the sanctioned party's failure to obey a court order compelling discovery. Plaintiffs have not filed a motion to compel, and this Court has not issued any orders compelling discovery in this matter. Accordingly, there is no basis for the Court to find Defendants in default for failure to cooperate in discovery under Rule 37(b). Plaintiffs' Motion for Default Judgment is therefore denied.

**B. Defendants' Motion to Dismiss Amended Complaint**

At the March 28, 2013 hearing, Plaintiffs' counsel consented to the dismissal of Counts I and V in the Amended Complaint. The Court will therefore only address Defendants' arguments as to Plaintiffs' claims of negligence (Count II), injunctive relief (Count III), and fraud/misrepresentation (Count IV).

*1. Statute of Frauds*

Michigan's statute of frauds provides that any action to enforce a promise to modify a loan cannot be brought against a financial institution unless the promise is written and signed. Mich.

---

[4]The Brief in Support of Plaintiffs' Verified Motion for Default Judgment Against Defendant(s) consists of a single sentence, which states as follows: "Plaintiffs relies on Fed. R. Civ. P. 33, 34, 36 & Fed. R. Civ. P. 55.2, the facts set forth in the motion and the court files for her brief in support of Motion for Default Judgment." (Br. in Supp. of Pls.' Mot. for Default J. at 1.)

7

Comp. Laws § 566.132(2)(b); *Crown Technology Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550 (2000) (noting that § 566.132(2) "plainly states that a party is precluded from bringing a claim – no matter its label – against a financial institution to enforce the terms of an oral promise to waive a loan provision.").

Defendants argue that Plaintiffs' claims in Counts II through IV are barred by Michigan's statute of frauds because they are based on oral promises to modify Plaintiffs' mortgage. Defendants argue that there are no allegations referring to any signed, written documents promising a modification.

In their Response, Plaintiffs assert that the Amended Complaint "clearly alleges a fraudulent misrepresentation with all of the exhibits presented[.]" (Pls.' Resp. 13.) However, there are no allegations in the Amended Complaint indicating that Defendants agreed to modify Plaintiffs' mortgage in a signed, written agreement. Nor do any of the documents included in Plaintiffs' exhibits appear to be a signed, written agreement to modify Plaintiffs' mortgage. Indeed, Plaintiffs contend in their Response that "[t]he verbal [Trial Period Plan] entered by the Defendant established a legal obligation for Plaintiff to meet and clearly shows that the foreclosure by BANA induce [sic] by fraud, misrepresentation and unequivocally wrongful [sic]." (Pls.' Resp. 6.) Plaintiffs thus admit that the alleged agreement to modify was based on verbal representations. Accordingly, because Plaintiffs have failed to allege that any promise to modify was made in a written and signed document, Plaintiffs' fraud claim must be dismissed. *See Smith v. Bank of Am. Corp.*, 485 Fed. Appx. 749, 753 (6th Cir. 2012) (noting that "to the extent the Smiths argue that the Bank orally promised to modify their loan, the claim is subject to the statute of frauds."); *Goryoka v. Quicken Loan, Inc.*, No. 11-2178, 2013 WL 1104991, at *2 (6th Cir. Mar. 18, 2013) (affirming district court's

dismissal of the plaintiff's fraud claims based on "modification discussions[,]" and noting that "[u]nder Michigan state law, no action to enforce a promise to modify can be brought against a financial institution unless the promise is written and signed.").

*2. Factual Allegations of Fraud/Challenge to Foreclosure Sale*

There is no dispute that Plaintiffs' right of redemption expired on September 8, 2012. Defendants argue that Plaintiffs' claims challenging the validity of the foreclosure sale should be dismissed because the period of time to redeem the property has expired, and Plaintiffs have not alleged a sufficient fraud to warrant setting aside the foreclosure sale. Plaintiffs contend that they have sufficiently alleged that Defendants "schemed, delayed, and blatantly lied to Plaintiff that her loan modification application was being processed . . . ." (Pls.' Resp. 14.)

In Michigan, a plaintiff's right, title, and interest in and to property are extinguished once the statutory redemption period expires. Mich. Comp. Laws § 3240(1); *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187-88 (1942). "The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity." *Schulties v. Barron*, 16 Mich. App. 246, 247-48 (1969); *see also Conlin v. Mortgage Electronic Registration Systems, Inc.*, No.12-2021, slip op. at 4-6 (6th Cir. Apr. 10, 2013) (noting that "a plaintiff-mortgagor must meet [a] 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period."). Actionable fraud in Michigan requires a showing of the following six elements:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge for its truth and as a positive assertion; (4) that he made it with the intention that it should be acted

> upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*U.S. Fidelity and Guaranty Co. v. Black*, 412 Mich. 99, 114 (1981) (citation omitted).

Plaintiffs have failed to allege fraud with the requisite particularity required under Federal Rule of Civil Procedure 9(b). "In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (citation and internal quotation marks omitted).

Plaintiffs allege that "Defendant, made false, fraudulent and misleading material misrepresentations to Plaintiffs and concealed material facts from Plaintiffs, which, under the circumstances, induced Plaintiff to rely on Defendant to re-modify her mortgage so that she would lose her home." (Am. Compl. ¶ 40.) Plaintiffs further allege that "Defendant, falsely represented to Plaintiffs that the mortgage was modifiable at the time Plaintiff continued to submit application after application. At the time Defendant, made these representations, Defendant had no intention of fulfilling them and, instead, intended to foreclose on Plaintiff's home which was done." (Am. Compl. ¶ 41.)

Plaintiffs' general allegations regarding alleged fraudulent promises to modify Plaintiffs' mortgage are insufficient to satisfy Rule 9(b). Plaintiffs have alleged only that Defendant BANA's agents represented on multiple occasions that Plaintiffs' mortgage would be considered for modification pending the receipt of certain documents, not that a modification would be granted. Plaintiffs have not alleged with any particularity why any of these representations were intentionally fraudulent. Furthermore, Plaintiffs have not alleged that they declined offers to refinance or

10

otherwise avoid foreclosure in reliance on Defendant BANA's representations. Plaintiffs have thus failed to allege how they relied on Defendant BANA's representations to their detriment.

In two recent unpublished decisions, the United States Court of Appeals for the Sixth Circuit has upheld the dismissal of similar fraud claims in the mortgage foreclosure context, because they lacked the requisite particularity under Rule 9(b). *See McLaughlin v. Chase Home Fin. LLC*, 2013 WL 1003465, at *4 (6th Cir. Mar. 14, 2013) (affirming dismissal of fraud claim where "the amended complaint [was] void of particularity as to the McLaughlins' claim for fraud and misrepresentation. . . . As such, this claim fails for lack of particularity under Federal Rule of Civil Procedure 9(b) . . . ."); *Smith v. Bank of Am. Corp.*, 485 Fed. Appx. 749, 754 (6th Cir. 2012) (table decision) (affirming dismissal of fraud claim where the plaintiffs alleged "that the Bank 'failed to disclose to [the Smiths] their intention to go forward with the Sheriff Sale,' and its 'representations were false, when they were made, as [the Bank] did not intend to fulfill its obligations' to the Smiths[,]" and finding that these allegations "failed . . . to meet the basic Rule 9(b) requirements . . . .").

Because Plaintiffs have failed to state a claim for fraud, Plaintiffs' request to set aside the foreclosure sale of their property must be denied. *Schulties*, 16 Mich. App. at 247-48.

*3. Negligence*

"It is well-established that a prima facie case of negligence requires a plaintiff to prove four elements: duty, breach of that duty, causation, and damages." *Fultz v. Union-Commerce Associates*, 470 Mich. 460, 463 (2004).

The Amended Complaint alleges that Defendants:

> owed various duties and obligations to their mortgagees, particularly plaintiff herein, including but not limited to the following:
>
> A.   The duty to properly process the Plaintiffs' modification

        application in a timely fashion.

    B.    The duty to advise the Plaintiffs that no loan would be provided.

    C.    The duty to advise the Plaintiffs to seek other financial assistance or be subject to the loss of property.

    D.    The duty to comply with the Michigan Elliott Larsen Civil Rights Act.

(Am. Compl. ¶ 35.) The Amended Complaint further alleges that Plaintiffs were injured and lost their home "[a]s a direct and proximate cause of the foregoing negligence . . . ." (Am. Compl. ¶ 36.)

Defendants argue that Plaintiffs have failed to allege any duty owed by Defendants to Plaintiffs. In addition, Defendants argue that Plaintiffs have failed to allege any breach of a duty, or any causation for their damages based on that breach.

Plaintiffs argue that "Defendants had a duty to provide borrowers such as Plaintiff with clear and understandable written information about the material terms, costs, and risks of the modified mortgage loan in a timely and true full [sic] manner to enable borrowers to make informed decisions . . . ." (Pls.' Resp. 15-16.) Although the claim in the Amended Complaint is for ordinary negligence, Plaintiffs cite a case on negligent misrepresentation, albeit from the Appellate Court of Illinois, which states that "[t]he law of negligent misrepresentation involves a breach of the duty to use due care in obtaining and communicating information upon which others may reasonably be expected to rely in the conduct of their economic affairs." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 586 N.E. 2d 600, 616 (Ill. App. 1991).

In Michigan, a negligence claim arises only where the plaintiff alleges a duty that is "separate and distinct" from a contractual duty. "The failure to perform a contractual duty cannot give rise to a tort action unless the plaintiff alleges a violation of a duty 'separate and distinct' from

the underlying contractual obligation." *Kisiel v. Holz*, 272 Mich. App. 168, 172 (2006). "[T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Fultz*, 470 Mich. at 467.

Plaintiffs only allege that Defendants "owed various duties and obligations to their mortgagees . . . ." (Am. Compl. ¶ 35.) Plaintiffs have therefore failed to allege any duty that is separate and distinct from the Defendants' contractual obligations, and their negligence claim thus fails. *See Johnson v. Wells Fargo Bank, N.A.*, No. 13-cv-10146, 2013 WL 823369, at *7 (E.D. Mich. Mar. 6, 2013) (dismissing negligence claim and holding that "Plaintiffs have not alleged that Defendant owed them a duty separate and distinct from the contractual obligations. In fact, the purported breach arises from 'the terms of the . . . mortgage agreement.' These allegations simply establish a duty that arose, if at all, pursuant to the note and mortgage."); *Droski v. Wells Fargo Bank, N.A.*, No. 2:11-cv-11193, 2012 WL 3224134, at *6 (E.D. Mich. Aug. 6, 2012) (dismissing negligence claim and noting that "Plaintiffs have not alleged that Defendant owed them a duty that is separate and distinct from its contractual obligations. Rather, Plaintiffs' allegations relate to Defendant's duties that arise, if at all, based on the loan, Mortgage, and Modification Agreement."); *Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *8 (E.D. Mich. Nov. 1, 2011) (dismissing negligence claim and noting that "plaintiff has not alleged that defendants owed him a duty that is separate and distinct from their contractual obligations.")

To the extent Plaintiffs' claim is for negligent misrepresentation, Plaintiffs' allegations still fall short. "A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying

13

party a duty of care." *Unibar Maintenance Services, Inc. v. Saigh*, 283 Mich. App. 609, 621 (2009). Plaintiffs have not alleged any facts showing that Defendants failed to use reasonable care when providing Plaintiffs with information. Plaintiffs have also failed to allege how they relied on any information to their detriment. Plaintiffs' factual allegations show only that Defendant BANA requested information from Plaintiffs several different times, that Plaintiff Yvonne Whitfield provided the information when it was requested, and that Defendants ultimately foreclosed on the property despite Plaintiffs' attempts to obtain a modification. The Amended Complaint does not allege any facts showing that Plaintiffs could have avoided foreclosure if Plaintiff Yvonne Whitfield had not relied on some information provided by Defendant BANA. Plaintiffs have thus failed to state a claim for negligent misrepresentation.

*4. Injunctive Relief*

Count III of the Amended Complaint alleges that "Plaintiff [sic] will and have suffered immediate and irreparable harm unless this Honorable Court issues injunctive relief against, [sic] specifically, Plaintiffs will be subject to monetary damages for having to file this complaint." (Am. Compl. ¶ 38.)

Plaintiffs' request for injunctive relief is denied because injunctive relief is a remedy and is not independently actionable. "It is well settled that an injunction is an equitable remedy, not an independent cause of action." *Terlecki v. Stewart*, 278 Mich. App. 644, 663 (2008). The Court will therefore dismiss Count III of the Amended Complaint.

*5. Claims Against Fannie Mae*

Every factual allegation in the Amended Complaint involves Plaintiffs and Defendant

BANA. There are no factual allegations regarding any actions taking by Defendant Fannie Mae. Accordingly, Plaintiffs have failed to state a claim against Defendant Fannie Mae. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

*6. Request to Amend*

On the last page of their Response, Plaintiffs state as follows:

> Plaintiff's [sic] Complaint is well-stated and not subject to dismissal. To the extent the Court believes otherwise, however, Plaintiff respectfully seeks Leave to Amend this Complaint to cure any technical pleading deficiencies identified by the Court so that the claims can be resolved on their merits at trial.

(Pls.' Resp. 20.)

Plaintiffs have not attached a proposed second amended complaint, as required by Eastern District of Michigan Local Rule 15.1. Plaintiffs have also not identified any documents or stated any facts that would allow a second amended complaint to survive a subsequent motion to dismiss.

Although leave to amend should be freely granted when justice so requires under Federal Rule of Civil Procedure 15(a), "[a] motion to amend a complaint should be denied if the amendment . . . would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Plaintiffs have failed to provide any additional facts that would cure the deficiencies in the Amended Complaint. The Court will therefore deny Plaintiffs' request to amend as futile.

## IV. CONCLUSION

For the reasons stated above, the Court will:

(1) **DENY** Plaintiffs' Motion for Default Judgment; and

(2) **GRANT** Defendants' Motion to Dismiss.

15

**SO ORDERED**.

                                                S/Paul D. Borman  
                                                PAUL D. BORMAN  
                                                UNITED STATES DISTRICT JUDGE

Dated: April 12, 2013

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 12, 2013.

                                                S/Denise Goodine  
                                                Case Manager